UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rene Benavides, Jr. | No. 1:25-cv-01488-GSA |
| Plaintiff, | **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSION OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| Commissioner of Social Security, | (ECF Nos. 14, 15) |
| Defendant | |

## I.    Introduction

Plaintiff Rene Benavides seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act.

## II.    Procedural Background

On October 25, 2022, Plaintiff applied for social security disability insurance benefits and supplemental security income alleging disability commencing on June 15, 2021, due to seizures. AR 213–26, 257. On March 1, 2024, after being denied initially and upon reconsideration, Plaintiff requested a hearing. AR 146–47.

On July 30, 2024, a hearing was held before an ALJ. AR 23–51. On November 27, 2024, the ALJ issued an unfavorable decision. AR 111–123. The Appeals Council denied the request for review on September 11, 2025. AR 1–6. On November 4, 2025, Plaintiff filed a complaint in this

1

Court.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but it is less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific

job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a Claimant. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the Claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a Claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the Claimant had medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the Claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the Claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the Claimant's RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 15, 2021. AR 116. At step two, the ALJ found that Plaintiff had the following severe impairments: left knee osteoarthritis with chondrocalcinosis and seizure disorder. AR 116–17

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 117.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and

concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except: 1- Plaintiff can occasionally climb ramps or climb stairs; 2- Plaintiff can never climb ladders, ropes, or scaffolds; 3- Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl, and 4- Plaintiff must avoid all exposure to hazards including unprotected heights and dangerous moving machinery.  AR 117–121.

At step four, the ALJ found that Plaintiff had no past relevant work.  AR 122.  At step five, relying on the Vocational Expert's testimony, the ALJ found that considering the Plaintiff's vocational profile (age, education, work experience and RFC), the Plaintiff could perform the following jobs existing in significant numbers in the national economy: assembler, cleaner, and marker.  AR 122.

Accordingly, the ALJ concluded that the Plaintiff was not disabled since the alleged disability onset date of June 15, 2021.  AR 123.

**V.    Issues Presented**

Plaintiff asserts one claim of error: the ALJ failed to articulate specific, clear and convincing reasons in rejecting his subjective symptoms.

**A.    Subjective Symptoms, RFC**

**1.    Applicable Law**

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a Claimant is still capable of doing despite the claimant's particular limitations.  This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record.  20 C.F.R. § 416.945(a)(1).  The residual functional capacity must consider all of the Claimant's impairments, whether those impairments are severe or non-severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the Claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the Claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the Claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a Claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, medical evidence "is still a relevant factor in determining the severity of Claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- the treatment other than medications that the claimant receives; 6- any other measures the Claimant uses to relieve pain or other symptom; and 7- Other factors concerning the Claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.    Analysis

#### a.    Summary of Plaintiff's Testimony

Plaintiff did not have a driver's license as it was suspended due to Plaintiff experiencing seizures. Plaintiff's seizures also prevent Plaintiff from working. Plaintiff experiences two to four seizures a week. Plaintiff could not describe the seizures. Plaintiff "ha[s] a feeling inside, and then from there, it gets blank." Plaintiff loses consciousness and "sleep for hours, even into the next

day."[1] Plaintiff is unaware of any triggers to the seizures which are unpredictable. Plaintiff has been on medication for "quite a while." Plaintiff sees a neurologist about 3 to 4 times per month. AR 29–37.

### b.    The ALJ's reasoning for discrediting testimony

The following comes from Plaintiff's 3-page analysis which begins at page 5 of the opening brief:

> Here, the ALJ rejects Benavides's testimony . . . that he experienced two to three seizures per week. (A.R. 118). However, the medical evidence does, in fact, support Benavides's testimony. On September 14, 2021, Benavides presented to Kern County Neurological for a follow-up evaluation. (A.R. 322) . . . he reported experiencing seizures one to two times per week. Id. He further reported post-seizure symptoms including sleepiness, fatigue, and memory problems. Id. This report is consistent with Benavides's hearing testimony.
>
> Although subsequent treatment notes reflect some variation and imprecision in Benavides's reports of seizure frequency, they nonetheless document ongoing and significant seizure activity. See (A.R. 403 (March 22, 2022 visit – reporting seizures every two to three weeks, including two seizures occurring back-to-back the day before the visit); 407 (July 25, 2022 visit – last seizure on July 12, 2022); 460 (April 5, 2023 visit – reporting two to three seizures in the prior month); 464 (August 1 2023 visit – reporting periodic seizures during the month, with the most recent occurring one week prior to the visit); and 469 (February 7, 2024 visit reporting two to three seizures per month, with the most recent occurring three days before the visit).
>
> While Benavides's testimony regarding the precise frequency of his seizures may not have been entirely consistent over time, the medical records more closely align with his testimony than with the ALJ's conclusion that the record fails to substantiate his seizure activity. Indeed, the ALJ makes no finding with respect to the frequency of Benavides' seizures. He just finds that the report of two to three a week is uncorroborated. (A.R. 118-119). The ALJ's assertion is not a specific, clear and convincing reason supported by substantial evidence . . .
>
> In addition, the ALJ finding regarding the frequency of seizures does not obviate his responsibility to articulate reasons as to Benavides' testimony regarding the impact of his seizures. Specifically, his testimony that he suffers memory problems and experiences blankness for hours after a seizure. (A.R. 32 and 37). The ALJ provides no rationale for rejecting this portion of Benavides' testimony and the impact on his condition. "An ALJ must clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement." . . .

---

[1] However, in a seizure questionnaire Plaintiff reported they last 10 to 15 minutes. AR 306.

The ALJ's only other discernible reason for discounting Benavides' testimony is the absence of emergency room visits or hospitalizations, which the ALJ characterizes as evidence of "conservative" treatment. This rationale is a red herring. Benavides has experienced seizures for virtually his entire life, and his current difficulty controlling them began after a car accident in 2021. (A.R. 36). He is consistently surrounded by family and remains compliant with his medication regimen. (A.R. 42). Benavides never alleged that his condition required emergency treatment, and the fact that his type of seizures does not necessitate emergency room care or hospitalization does not undermine his testimony. See, e.g., Nichole K. v. Saul, 2020 U.S. Dist. LEXIS 82591, at *6 (D. Or. May 11, 2020) ("[T]here is no indication that more aggressive treatment options were available or appropriate to treat Plaintiff's migraines and syncopal episodes."). As his aunt testified at the hearing, the physician's instruction following a seizure was simply to ensure that Benavides takes his medication. (A.R. 43). Which he does on a regular basis and despite this fact, he still experiences seizures.

Moreover, the ALJ never questioned Benavides regarding the absence of emergency room visits or hospitalizations. The Commissioner's binding ruling expressly provides that he "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling (SSR) 16-3p. If the ALJ believed that Benavides's course of treatment was inconsistent with the severity of the symptoms alleged – which it was not – he was required to inquire into the reasons for that treatment history. See Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992, as amended Sept. 17, 1992) (per curiam) ("[T]he ALJ is not a mere umpire at [an administrative proceeding], but has an independent duty to fully develop the record[.]"); see also Sims v. Apfel, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]"). Therefore, the ALJ's reliance on a lack of emergency room visits or hospitalizations is not a specific, clear and convincing reason to reject Benavides' testimony regarding his seizures and resultant limitations. Burrell, 775 F.3d at 1136–37.

To begin, Plaintiff places emphasis on the ALJ's alleged failure to make any finding as to the frequency with which Plaintiff experiences seizures. However, this argument turns the burden of proof on its head as it is Plaintiff's obligation to prove disability (applicable here, seizure frequency), not the ALJ's obligation to disprove Plaintiff's alleged disability. The caselaw supporting this proposition is extensive. See, e.g., Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability."). SSR 17-4p

7

("Although we take a role in developing the evidentiary record . . . claimants . . . have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims."); Bowen v. Yuckert, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Equally of note is Plaintiff's own claim regarding his seizure frequency, which is not altogether consistent with the record. For instance, contrary to Plaintiff's testimony that he was having seizures 2-3 times per week (AR 32, 306), the ALJ noted that the record reflected less frequent seizures, namely 1 seizure every 2-3 weeks (AR 403). Other records suggest that the latter statement better approximates the seizure frequency. See AR 460 (reported about 2-3 seizures in the last month); AR 469 (same).

In addition, despite Plaintiff's testimony that following a seizure he would sleep for hours or into the next day, his seizure questionnaire only noted that his seizures would last 10–15 minutes, and even more importantly did not identify longer periods even though the form specifically asked, "how long until you can resume normal activity." AR 306.

Returning to seizure frequency, Plaintiff appears to concede that although "treatment notes reflect some variation and imprecision in Benavides's reports of seizure frequency, they nonetheless document ongoing and significant seizure activity. See (A.R. 403 (March 22, 2022 visit – reporting seizures every two to three weeks, including two seizures occurring back-to-back the day before the visit)." Br. at 6, Doc. 14 (emphasis added). Plaintiff continues stating that "while Benavides's testimony regarding the precise frequency of his seizures may not have been entirely consistent over time, the medical records more closely align with his testimony than with the ALJ's conclusion that the record fails to substantiate his seizure activity." Br. at 6 (emphasis added). However, even should Plaintiff be correct that the medical records "more closely align" with the seizure frequency identified in his testimony, his argument still falls short of demonstrating harmful

8

error.  Specifically, when evidence is susceptible to more than one rational interpretation it is the ALJ's conclusion that must be upheld, not the plaintiff's conclusion even if the plaintiff's conclusion is a rational one.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  Put another way, the primary question for the Court here is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the contrary conclusion: non-disability.  See Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).  This deferential "substantial evidence" standard applies to an ALJ's reasonably supported conclusion, not to Plaintiff's contrary conclusion even if that conclusion is equally reasonable.

As an aside, Plaintiff's reply brief warrants addressing.  In it, Plaintiff understandably takes issue with Defendant's partial reliance on Plaintiff's successful knee surgery and minimal outpatient treatment for his knee condition. Reply at 3.  Indeed, the knee condition was not the subject of Plaintiff's appeal and thus Defendant's reliance on same is not relevant.  Notwithstanding, this non relevancy does not undermine the ALJ's conclusions regarding Plaintiff's seizures and their non-disabling effects.

Plaintiff further explains that while objective medical evidence is a relevant consideration, it cannot be the sole consideration. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (An ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.").  Reply at 2.  Here, Plaintiff asserts that "The Commissioner's response seeming[ly] concedes that the ALJ did not consider anything but a purported lack of objective support – thus "render[ing] [Benavides'] subjective symptom testimony superfluous…" Smartt v. Kijakazi, 53 F.4th 489, 495 (9th Cir. 2022). Id.  Plaintiff contends that "the Commissioner's responses, couching, treatment with objective support is no more than a backdoor finding of a lack of objective support . . ." Id. (emphasis added).  Plaintiff's argument here is misplaced because the fact that Plaintiff's subjective account of seizure frequency, 1 every

2-3 weeks, happens to appear in a medical record (AR 403) under "HPI" (history of present illness), simply does not transform it into an objective finding.  Furthermore, not only was this Plaintiff's own subjective account of seizure frequency reported to a clinician, this account is also not consistent with other subjective statements Plaintiff made regarding seizure frequency.   Hence, Plaintiff's own varying subjective accounts of seizure frequency supports the non-disability finding.

In sum then, given the deferential "substantial evidence" standard on appeal, the ALJ's reasonable interpretation of the evidence must control.

**VI.    Conclusion and Order**

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1.  Plaintiff's motion for summary judgment (Doc. 14) is **DENIED**.

2.  Defendant's cross motion (Doc. 15) is **GRANTED.**

3.  The Commissioner's Decision is **AFFIRMED**

4.  The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:    **March 13, 2026**              **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE

10